# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Case Nos. 23-1027 & 23-1127

---

ALLSTATE LIFE INSURANCE COMPANY,

Plaintiff – Appellee / Counter-Appellant,

v.

JEFFREY STILLWELL, STILLWELL FINANCIAL ADVISORS, LLC, and
THERESA FRANCY

Defendants – Appellants / Counter-Appellee.

---

On Appeal From An Order Of The
United States District Court, District Of New Jersey

---

## RESPONSE BRIEF AND PRINCIPAL BRIEF OF APPELLEE / COUNTER-APPELLANT ALLSTATE LIFE INSURANCE COMPANY

---

**Plaintiff – Appellee / Counter – Appellant**
By Their Attorney,

*/s/ J. Scott Humphrey*
J. Scott Humphrey
Katie M. Burnett
Sammi H. Roth
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 S. Wacker Dr., Suite 1600
Chicago, Illinois 60606-4637
Telephone: 312-212-4949
shumphrey@beneschlaw.com
kburnett@beneschlaw.com
sroth@beneschlaw.com

**Dated:  August 18, 2023**

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure ("Fed. R. App. P.") 26.1 and 3d Cir. L.A.R. 26.1 (2011), Plaintiff-Appellee Allstate Life Insurance Company ("ALIC"), hereby discloses that it is a wholly-owned subsidiary of Allstate Insurance Company, which is an Illinois insurance company.  Allstate Insurance Company is a wholly-owned subsidiary of Allstate Insurance Holdings, LLC, which is a Delaware limited liability company.  Allstate Insurance Holdings, LLC is a wholly-owned subsidiary of The Allstate Corporation, a Delaware corporation.  No publicly held entity owns 10% or more of the stock of The Allstate Corporation.

## **TABLE OF CONTENTS**

Page

STATEMENTS AND SUMMARIES.....................................................................1

I.    SUBJECT MATTER AND APPELLATE
      JURISDICTION...................................................................................1

II.   ISSUES...............................................................................................1

III.  RELATED CASES AND PROCEEDINGS .........................................2

IV.   STATEMENT OF THE CASE ...........................................................2

      A.    Introduction ...........................................................................2

      B.    Relevant Factual Background ................................................4

            i.    Stillwell And Francy Enter Into Agreements
                  With ALIC. ..................................................................4

            ii.   Stillwell And Francy Breach Their
                  Contractual Obligations. .............................................7

                  1.    Stillwell and Francy Retain and Fail
                        to Return ALIC Confidential
                        Information. ......................................................8

                  2.    Stillwell Uses ALIC's Confidential
                        Information to Leverage
                        Compensation at Ameriprise. ...........................10

                  3.    Stillwell and Francy Use ALIC
                        Confidential Information to Solicit
                        ALIC Customers Both Before And
                        After Their Terminations. .................................11

            iii.  ALIC's Payment Of The Asset Capture and
                  Life Performance Bonuses To Stillwell. .....................13

      C.    Procedural History ................................................................15

            i.    Resolution of the Motions for Summary
                  Judgment ....................................................................16

i

          ii.     Resolution of the Motions for Attorneys'
Fees and Costs ................................................................18

    D.    Rulings Presented For Review .....................................19

**SUMMARY OF THE ARGUMENT** ..................................................**20**

**ARGUMENT** ...............................................................................**21**

    I.    The District Court Correctly Granted Summary Judgment
To ALIC On Counts I-IV, VI, and VII And Incorrectly
Granted Summary Judgment to Stillwell As To
Counterclaim I. ....................................................................21

    A.    Scope of Review ..........................................................21

    B.    The District Court Correctly Granted Summary
Judgment To ALIC As To The LPB (Count I of
Counterclaim).............................................................21

    C.    The District Court Correctly Granted Summary
Judgment To ALIC On Its Summary Judgment
Claims Because No Factual Disputes Existed. .........................27

          i.     There Is No Genuine Dispute Of Material
Fact As To The Origin Of The
"Announcement List." .....................................30

          ii.    There Is No Genuine Dispute Of Material
Fact As To Whether The Announcements
Were Prohibited Solicitations. ........................37

    D.    The District Court Correctly Granted Summary
Judgment To ALIC As To Breach of Contract
Against Stillwell and Francy (Counts I and VII). ....................40

    E.    ALIC Is Entitled To Summary Judgment As To
The ACB (Counterclaim I). .......................................43

    II.    The District Court Correctly Determined That ALIC Was
The Prevailing Party And Entitled To Its Attorneys' Fees
And Costs. ...........................................................................48

A.   Scope of Review .......................................................49

B.   Third Circuit Law Dictates That ALIC Is The
     Prevailing Party.................................................50

C.   The District Court Correctly Awarded ALIC With
     Its Costs. ...........................................................56

D.   The District Court Correctly Awarded ALIC With
     Its Attorneys' Fees. ............................................57

**CONCLUSION**........................................................................**59**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addie v. Kjaer*,
  836 F.3d 251 (3d Cir. 2016) ...............................................................49

*Allstate Insurance Company et al. v. Ameriprise Financial Services, Inc.*,
  Case No. 1:17-cv-05826 ........................................................................2

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).......................................................................21, 27

*Bank of America Investment Services, Inc. v. Byrd*,
  No. 2:09CV211, 2009 WL 10184606 (E.D. Va. June 15, 2009) .......................38

*Beard v. Banks*,
  548 U.S. 521 (2006)........................................................................27, 35

*Chemetall US Inc. v. Laflamme*,
  Civil Action No. 16-780 (JLL), 2016 WL 885309 (D.N.J. Mar. 8, 2016) ...................................................................................................40

*Cmty. Hosp. Grp., Inc. v. More*,
  183 N.J. 36, 869 A.2d 884 (2005) ......................................................41

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
  482 U.S. 437 (1987)..........................................................................56

*Doe v. Busbee*,
  684 F.2d 1375 (11th Cir. 1982) .........................................................53

*Edward D. Jones & Co., L.P. v. Kerr*,
  415 F. Supp. 3d 861 (S.D. Ind. 2019)................................................37

*Emerson Radio Corp. v. Orion Sales, Inc.*,
  253 F.3d 159 (3d Cir. 2001) .........................................................21, 22

*Flamini v. Valez*,
　No. CIV. 12-7304 RMB/JS, 2015 WL 333300, at *2 (D.N.J. Jan.
　23, 2015) ................................................................................56

*Gibson v. Mayor of Wilmington*,
　355 F.3d 215 (3d Cir. 2004) ..............................................26

*Great Atl. & Pac. Tea Co. v. Checchio*,
　762 A.2d 1057 (N.J. App. Div. 2000) ................................47

*H&R Block E. Enterprises, Inc. v. Morris*,
　606 F.3d 1285 (11th Cir. 2010) ..........................................39

*Heffron v. Adamar of New Jersey, Inc.*,
　270 F. Supp. 2d 562 (D.N.J. 2003) .....................................46

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ............................................................50

*HR Staffing Consultants LLC v. Butts*,
　627 F. App'x. 168 (3d Cir. 2015) .......................................40

*Institutionalized Juvs. v. Sec'y of Pub. Welfare*,
　758 F.2d 897 (3d Cir. 1985) .......................................*passim*

*Interlink Grp. Corp. USA v. Am. Trade & Fin. Corp.*,
　Case No. 12-6179(JBC), 2014 WL 3578748 (D.N.J. July 18, 2014) ................54

*Kendall McGaw Laboratories, Inc. v. Community Memorial Hosp.*,
　125 F.R.D. 420 (D.N.J. 1989) .............................................53

*Lamorte Burns & Co. v. Walter*s,
　167 N.J. 285, 770 A.2d 1158 (2001) ..............................38, 41

*Litton Indus., Inc. v. IMO Indus., Inc.*,
　200 N.J. 372 (2009) ............................................................57

*Lucas v. Romito*,
　2017 WL 4125756 (D.N.J. Sep. 18, 2017) ........................33

*Matsushita Elec. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) .........................................................27, 28

*Michaels v. Brookchester, Inc.*,
26 N.J. 379, 140 A.2d 199 (1958) ...................................................46

*Mylan Inc. v. SmithKline Beecham Corp.*,
723 F.3d 413 (3d Cir. 2013) .................................................21, 27

*N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,
158 N.J. 561, 730 A.2d 843 (1999) ...................................................56

*Nappe v. Anshelewitz, Barr, Ansell & Bonello*,
97 N.J. 37 (1984) ..............................................................54

*Nat'l Reprographics, Inc. v. Strom*,
621 F. Supp. 2d 204 (D.N.J. 2009)...................................................41

*Paladino v. Newsome*,
885 F.3d 203 (3d Cir. 2018) ...........................................................33

*In re Paoli R.R. Yard PCB Litig.*,
916 F.2d 829 (3d Cir. 1990) ..........................................................27

*Philadelphia and Reading Corp. v. United States*,
944 F.2d 1063 (3d Cir. 1991) ........................................................20

*Platinum Mgmt., Inc. v. Dahms*,
285 N.J. Super. 274, 666 A.2d 1028 (N.J. Super. Ct. Law Div.
1995) ..............................................................................41

*Ross v. Horn*,
598 F.2d 1312 (3d Cir. 1979) ........................................................50

*Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly,
Inc.*,
737 F.3d 879 (3d Cir. 2013) ..........................................................39

*Solari Indus. v. Malady*,
264 A.2d 53 (N.J. 1970) .............................................................41

*Spiegel v. Evergreen Cemetery Co.*,
186 A. 584 (N.J. 1936) ..............................................................54

*Stella v. Department of Education*,
367 F. Supp. 3d 235 (D. Del. 2019)...................................................36

*Suncoast Tours, Inc. v. Lambert Grp., Inc.*,
  No. CIV. A. 98-5627 (JEI, 1999 WL 1034683, at *8 (D.N.J. Nov.
  10, 1999)) ................................................................................................34

*Tamarind Resort Assocs. V. Gov't of Virgin Islands*,
  138 F.3d 107 (3d Cir. 1998) ...............................................................21

*Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*,
  989 F.2d 132, 135 (3d Cir. 1993) ...............................................20, 47

*Tyler v. O'Neill*,
  112 F. App'x. 158 (3d Cir. 2004) .......................................................49

*UBS Financial Services, Inc. v. Christenson*,
  No. CIV. 13-1081 MJD/JSM, 2013 WL 2145703 (D. Minn. May
  15, 2013) .......................................................................................37, 38

*USI Ins. Servs. LLC v. Miner*,
  801 F. Supp. 2d 175 (S.D.N.Y. 2011) ................................................39

*Warren Distrib. Co. v. InBev USA, LLC*,
  DKT No. CIV.A. 07-1053 RBK/J, 2011 WL 770005 (D.N.J. Feb.
  28, 2011) .............................................................................................49

*Woloszyn v. Cnty. of Lawrence*,
  396 F.3d 314 (3d Cir. 2005) ...............................................................27

*York Grp., Inc. v. Pontone*,
  2014 WL 896632 (W.D. Pa. 2014) ....................................................36

## Statutes

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1920 ...................................................................................55, 56

42 U.S.C. § 1988 .........................................................................................49

N.J.S.A. § 56:15-4 .......................................................................................53

Third Circuit Law.........................................................................................49

**Other Authorities**

Cir. L.A.R. 26.1 (2011) ................................................................. 2

Cir. L.A.R. 46.1 .......................................................................... 61

Fed. R. App. P. 28.1(e)(2) ......................................................... 61

Fed. R. App. P. 32(a)(5) ............................................................ 61

Fed. R. App. P. 32(a)(6) ............................................................ 61

Fed. R. App. P. 32(f) ................................................................. 61

Fed. R. Civ. P. 54(d)(1) ............................................................. 55

Fed. R. Civ. P. 56(a), (b) ........................................................... 53

Federal Rule of Civil Procedure 54(d) ............................... *passim*

Local Rules 54.1 and 54.2 ..................................................... 18, 55

Rule 56 ........................................................................... 26, 27, 53

## STATEMENTS AND SUMMARIES

### I.     SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties have diverse citizenship, and the amount in controversy exceeds $75,000. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

### II.     ISSUES

A.     Whether the District Court correctly granted summary judgment in favor of ALIC and against Stillwell on Count II of the Amended Complaint with respect to the $34,875 Life Production Bonus ("LPB").

B.     Whether there were no genuine disputes of material fact with respect to the information relied on by the District Court in granting summary judgment, and whether the District Court therefore correctly granted summary judgment, in ALIC's favor on Counts I, III, VI, and VII of the Amended Complaint.

C.     Whether the District Court erred in granting summary judgment in favor of Appellant Jeffrey Stillwell and against ALIC on Counterclaim I with respect to the $98,683.36 Assets Captured Bonus ("ACB").

E.     Whether the District Court correctly determined that ALIC was the prevailing party, and therefore, entitled to costs.

F.     Whether the District Court correctly determined that ALIC was the prevailing party, and therefore, entitled to attorneys' fees.

## III.   RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court.  A similar case titled *Allstate Insurance Company et al. v. Ameriprise Financial Services, Inc.*, Case No. 1:17-cv-05826, is pending in the United States District Court for the Northern District of Illinois.  Appellants are not defendants in the case pending before the Northern District of Illinois, but the case does contain allegations involving the actions of the Appellants with respect to the actions of Ameriprise Financial Services, Inc.

## IV.   STATEMENT OF THE CASE

### A.   Introduction

Plaintiff Allstate Life Insurance Company ("ALIC") initiated this lawsuit after Jeffrey Stillwell ("Stillwell") and Theresa Francy ("Francy") breached their agreements and stole ALIC confidential information, and Stillwell, Francy, and Stillwell Financial Advisors ("SFA") (collectively "Appellants") engaged in tortious interference and unfair competition.

Shortly after abruptly terminating their agency relationship with ALIC on September 11, 2015 and claiming that they had "not retained any files", ALIC discovered that Stillwell and Francy not only egregiously violated their agreements with ALIC, but also schemed to steal, and actually did steal, voluminous amounts of confidential ALIC data and customer information, including ALIC customer names, addresses, email addresses, phone numbers, contact status, birthdays, referring agent

information, specific policy information, and notes about customer preferences and recommendations. Stillwell and Francy intended to use ALIC's confidential information to divert ALIC's customers from ALIC to SFA and their new employer, Ameriprise Financial Services, LLC ("Ameriprise"), a direct competitor of ALIC. It is undisputed that: (a) Appellants downloaded several different customer lists from ALIC databases prior to leaving ALIC; (b) Appellants lied to ALIC about retaining ALIC confidential information; (c) Appellants contacted numerous ALIC customers to divert them from ALIC to SFA and Ameriprise; and (d) in making those contacts, Appellants used their ALIC address on the solicitations. A6-A9. Appellants also used the stolen ALIC confidential information to leverage a large signing bonus, among other bad acts. Each of these wrongful acts violated their Agreements with ALIC as well as the law.

Caught red handed, this appeal is Appellants' last-ditch effort to justify their illegal actions and minimize the damage resulting therefrom. Unfortunately, the justifications and defenses that Appellants offer in their Brief are not new; they have been litigated and rejected *ad nauseum*. With the exception of the District Court's undeveloped conclusions about the ACB bonus, the District Court's findings are well-reasoned and supported by law.

This Court, therefore, should reject Appellants' attempts to inject strained fact issues into the District Court's summary judgment conclusions and affirm its

3

findings.  Likewise, this Court should reject Appellants' stretched interpretation of the Third Circuit's prevailing party case law and affirm the District Court's granting of attorneys' fees and costs to Allstate.  Finally, this Court should reverse the District Court's ACB decision because the decision failed to fully grasp the evidence offered by the parties.

### B.    Relevant Factual Background

ALIC is one of the nation's leading providers of insurance and financial products and services to individuals and businesses.  A237.  Specifically, ALIC sells life insurance, fixed annuities, and long-term disability insurance both directly and through the appointment of independent Exclusive Financial Specialists ("EFSs").  A2.

### i.    Stillwell And Francy Enter Into Agreements With ALIC.

Stillwell was an EFS for ALIC for approximately seven years, from June 2008 through September 2015. A2.  His relationship with ALIC was governed by the Allstate L2000S Exclusive Financial Specialist Independent Contractor Agreement ("EFS Agreement"), which Stillwell signed on June 16, 2008.  A141.  Under the terms of the EFS Agreement, Stillwell was permitted to hire employees to assist with his sale of life insurance and related products, and Stillwell hired Francy to be a member of his staff in July 2012.  A142 at § II(E).  As a member of his staff, Stillwell was required to have Francy execute a "Confidentiality and Non-Competition

Agreement" ("LSP Agreement") before Francy could access ALIC confidential information and perform services on behalf of Stillwell and ALIC. A144 at § IV(C). Francy executed the LSP Agreement on July 30, 2012. A270. She worked as Stillwell's Operations Manager until September 2015, when they both left ALIC and began working at SFA. A2.

Both the EFS and LSP Agreements (collectively, the "ALIC Agreements") prohibit Stillwell and Francy, for one year following the termination of their ALIC Agreements, from soliciting, selling, or servicing life insurance policies, annuity contracts, or other business, in competition with the business of ALIC:

- with respect to any person, company, or organization to whom Stillwell, or any person employed by Stillwell, including Francy, sold insurance or other products or services on behalf of ALIC and who is a customer of ALIC at the time of the termination of their ALIC Agreements;

- with respect to any person, company, or organization who was a customer of ALIC at the time of termination of their ALIC Agreements and whose identity was discovered by them as a result of Stillwell's status as EFS or their access to ALIC's confidential information; or

- from any office or business site located within one mile of any locations which they solicited or sold ALIC or other products or services during the year immediately preceding the termination of their ALIC Agreements.

A149 at § XVIII(D); A271-72 at ¶ 7.

Further, Stillwell and Francy acknowledged in their ALIC Agreements that the following is ALIC confidential information and property:

> business plans of [ALIC]; **information regarding the names,
> addresses**, and ages of policyholders of [ALIC]; **types of policies**;
> amounts of insurance; premium amounts; **the renewal dates of
> policies**; **policyholder listings and any policyholder information**
> subject to any privacy law; claim information; certain information and
> material identified by [ALIC] as confidential or information considered
> a trade secret as provided herein or by law; and any information
> concerning any matters affecting or relating to the pursuits of [ALIC]
> that is not otherwise lawfully available to the public. (emphasis added)

A144 at § IV(D); A271 at ¶ 3 (emphasis added). ALIC confidential information is

closely guarded by ALIC and only became available to Stillwell and Francy once

they executed their ALIC Agreements. The time, expense, and effort that have gone

into the development of ALIC's confidential information are such that the

independent development of identical or comparable materials by ALIC competitors

would be extraordinarily difficult and expensive. Naturally then, the ALIC

Agreements required, and Stillwell and Francy agreed to, (a) maintain the

confidentiality of ALIC's confidential information; (b) only use ALIC confidential

information to benefit ALIC; (c) return all of ALIC confidential information to ALIC

when their Agreements terminated; (d) not use ALIC confidential information for

any purpose other than ALIC business; and (e) cease using ALIC confidential

information after their affiliation with ALIC ends. A143-44 at § IV(A-E); A148 at

§ XVIII(B); A271 at ¶¶ 3-5.

### ii. Stillwell And Francy Breach Their Contractual Obligations.

Stillwell and Francy abruptly terminated their relationship with ALIC on Friday, September 11, 2015. A1077.  They chose a Friday departure because it is easier for advisors to solicit  customers about their new firm on a Friday and over the weekends, as opposed to the rest of the week.  *Id*.  Stillwell's abrupt termination ignored the 90-day notice provision found in his EFS Agreement and, instead, he immediately began working for Ameriprise—a direct competitor of ALIC.  A5-A6; A152-A156; A1077.

Stillwell and Francy also failed to comply with other explicit provisions of their ALIC Agreements.  For example, Stillwell and Francy *admit* that they (a) retained and failed to return ALIC confidential information; (b) used ALIC confidential information for their benefit and/or the benefit of SFA and Ameriprise; (c) referred a potential ALIC customer to another company without ALIC's consent; (d) solicited ALIC clients; and (e) competed with ALIC from the same location as their ALIC location.  A5-A11; A14-A18.  Just as, if not more, disturbing, ALIC later learned through extensive discovery and a forensic examination of Appellants' computers that Stillwell and Francy's stealing and use of ALIC confidential information was the culmination of a months' long planning effort to transition ALIC customers to SFA.  A6; A988; A1066; A1857-A1863.

### 1.    Stillwell and Francy Retain and Fail to Return ALIC Confidential Information.

Part of Stillwell's and Francy's plan was to deceive ALIC about their possession and use of ALIC confidential information.  A6; A988; A1066; A1857-A1863.  For example, as early as July 2015, Stillwell and Francy agreed that they would terminate their affiliation with ALIC on September 11, 2015. A2318-A2319; A2364-A2365. A forensic examination of the Appellants' computers revealed that in August 2015, approximately 30 days before leaving ALIC, Francy downloaded and used ALIC information to generate a list containing over 2,000 names from Stillwell's ALIC book of business.  A2126-A2209; A2388.  The list contained not only ALIC customer names, but also contact information for each of the customers. A1865; A1869-A1916.  To shield this list from discovery (and although the holidays are in December, not August), Stillwell and Francy titled the list, "Holiday List." A1869-A1916; A2192-A2195.

Francy also populated an ACT!™ database with ALIC customer information prior to her termination from ALIC, and Francy admitted to using ALIC's internal database, AccessAllstate, to populate the ACT!™ database.  A357-A358; A478-A479; A1863; A2117-A2119.  Put another way, Francy admitted to taking ALIC's most confidential information (customer names and contact information) and placing the information on a database not owned or operated by ALIC immediately before she and Stillwell terminated their relationship with ALIC.  A478-A479.  The

purpose of placing ALIC confidential information on a non-Allstate database was to use the confidential information not on behalf of ALIC, but instead on behalf of themselves and their new employer, Ameriprise.  A149; A271-72; A1080.  This action was a blatant, and knowing, violation of their ALIC Agreements.  A988; A1066; A1857-A1863.

And Stillwell and Francy were not done there.  After stealing and retaining the ALIC confidential information, Stillwell and Francy downloaded from ALIC's database and retained a customer list that the District Court called the "Announcement List."  A7; A1939-A1943; A2126-A2145.  The Announcement List is identical to the "Database List," which was also downloaded from ALIC's database.  A7; A1319-A1320; A1939-A1943; A2126-A2145.  The Announcement List and the Database List each contain approximately 150 names of clients, along with each client's address, city, state, and telephone number.  *Id*.  Both documents contain the same columns, order, and font, as well as a shorter list titled "CONTROLLED BUSINESS."  *Id*.  The Announcement and Database Lists are also alphabetized by last name, and both lists contain the same two clients and controlled businesses at the end of the list that are not alphabetized.  A7-A8.  Additionally, in both lists, the last two names on the "controlled business" section are surrounded by vertical borders while other names in that section are not.  *Id*.; A1939-A1943; A2126-A2145.

Stillwell and Francy also stole from ALIC (and retained) client backup folders for individual ALIC customers; an ALIC Customer Contact List; a list of Client Brokerage Accounts that contained names, addresses, and contact information for ALIC customers with brokerage accounts; and a list of ALIC customers with life insurance policies that included the referring agent and specific policy information for each ALIC customer, among others. A9; A1869-A1916; A1939-A1943; A2126-A2209.  In total, Appellants stole over 2,000 customers' names and contact information. *Id*.

Meanwhile, on both September 11, 2015 and September 29, 2015, Stillwell inexplicably and unequivocally told ALIC that he was not in possession of any ALIC confidential information: "I have not retained any copies of [ALIC's] files" and "Mr. Stillwell is not in possession of *any* Allstate information." A153; A187-A188; A902; A2996-A2298 (emphasis added).

### 2. Stillwell Uses ALIC's Confidential Information to Leverage Compensation at Ameriprise.

Prior to his termination from ALIC, Stillwell had planning meetings and exchanged correspondence with Ameriprise, where he discussed existing and potential ALIC customers that he could transition to Ameriprise. A6; A1160-A1161; A1171-A1173; A2066-A2067; A2092. During these meetings, Stillwell used ALIC's confidential customer information to leverage a $646,000 compensation package.  *Id.*  Notably, Ameriprise did not have a book of business or leads for

Stillwell when he joined Ameriprise. A1092-A1093; A2016; A2092-A2093. Hence, Stillwell's high six-figure compensation package was in exchange for diverting ALIC customers to Ameriprise. *Id.*

> **3.    Stillwell and Francy Use ALIC Confidential Information to Solicit ALIC Customers Both Before And After Their Terminations.**

Before leaving ALIC, Stillwell instructed ALIC representatives to "back off" and "stand down" with respect to pursuing additional lines of business with an ALIC customer, the Munoz Family. A8-A9; A504; A2122-A2123. Stillwell did so because, on August 27, 2015, Stillwell told Ameriprise about the Munoz opportunity. A457; A2066-A2067. He also wrote about the opportunity, stating that "it would be a great starting point if I could manage to begin with $500,000 production credits in the early months of transition." *Id*; A1930; A2095-A2097; A2122-A2124. Ameriprise subsequently paid Stillwell a $250,000 commission for writing the Munoz policy at Ameriprise. A8, A457, A947-A948, A1171-A1173. Further, three days before their departure from ALIC, Francy sent emails to Ameriprise about another ALIC customer that she and Stillwell wanted to transition to Ameriprise. A2378.

Stillwell and Francy also accessed and used the customer lists they stole from ALIC to solicit customers to SFA and/or Ameriprise before and immediately upon their transition to Ameriprise. A944; A1860-61. They did this by (a) sending

unsolicited packages to ALIC customers that instructed the customers on changes that needed to be made to their accounts; (b) calling, texting, and personally visiting ALIC customers in order to persuade them to move ALIC business to SFA and Ameriprise; and (c) instructing other Stillwell staff members to reach out to customers to tell them about their transition to Ameriprise. A1175-A1183; A1860-A1862; A1933-A1943; A2016-A2017.

For example, on September 11, 2015, the day that Stillwell and Francy terminated their relationships with ALIC, Stillwell informed Matthew Byrnes that he left ALIC and joined Ameriprise. A2123-A2124. About two weeks later, Stillwell met with Matthew Byrnes' mother, Maureen Byrnes, about her life insurance policy at ALIC. A1945-A1948; A2123-A2124. He attempted to persuade her to move her business to SFA and Ameriprise. *Id*.

Additionally, beginning on September 11, 2015, the date of their terminations from ALIC, Francy sent out announcements to ALIC customers from the "Announcement List" advising them of Stillwell's transition to Ameriprise and the creation of SFA. A1109; A1175; A1317; A1861; A1933-A1937. In doing so, Stillwell and Francy told the customers that Stillwell was "a new member of the Ameriprise Financial team" and Francy was the "Operations Director" for Stillwell's newly created firm SFA. The announcement further told ALIC customers that

Stillwell and Francy were operating SFA out of their former ALIC location.  A6-A7; A2016; A2100-A2110.

Stillwell and Francy sold products that competed with ALIC products out of their former ALIC location for at least one month after terminating their relationship with ALIC.  A279-A280; A446-A447; A1077; A1184; A1862.  As a result of the Appellants' retention of and access to ALIC's customer lists, as well as the solicitations described above, the Appellants caused several ALIC customers to divert their business to Ameriprise.  A9.  Appellants themselves admit that the number of customers may amount to at least twenty.  A988; A1066; A2094.

### iii. ALIC's Payment Of The Asset Capture and Life Performance Bonuses To Stillwell.

As an EFS, Stillwell was paid commissions pursuant to Stillwell's ALIC Agreement and the EFS Supplement.  A11; A141 at § I(C); A1954-A1974; A2035. Stillwell's Agreement and the Supplement provide the specific rules and guidelines regarding EFS compensation, including the details of bonus programs and the payment of bonuses, among other things.  A11; A140-A151; A1954-A1974. Specifically, the Supplement provides for the payment of the Assets Captured Bonus ("ACB") and Life Production Bonus ("LPB") as well as the procedures for when and how bonuses are earned.  A11; A1808-A1813; A2037.

Both the LPB and ACB bonuses are typically paid in January of each year and are based upon certain production metrics realized (or not realized) in the prior

calendar year. A513-A514; A518; A971; A1967-68; A2039-2040. Because the bonuses are based on the prior year's commissions, the bonuses are considered "earned" in January. A520-A521, A524. If an EFS terminates his affiliation with ALIC prior to January, he is ineligible to earn the bonuses from the prior calendar year and the bonuses are considered "unearned." A520-A521; A524; A1967-68 at § 4.2. The EFS Agreement provides that any "unearned" commissions may be returned to ALIC by "reducing any future commissions, awards, or bonuses" owed to the EFS. A147 at XV(C); A2039-A2040. Hence, if an EFS terminates his affiliation with ALIC before January but after receiving a bonus, the bonus may be recovered by ALIC or the EFS is obligated to repay the bonus to ALIC. *Id*.; A515-A518; A1967-68.

The LPB is calculated at the end of each calendar year by totaling an EFS's "bonus credits," which are earned based on the production amounts EFSs wrote that year, and paying out 25% of the bonus credits at the end of each year. A11; A535; A1967-A1968. The ACB program was being phased out or "sunsetted" in 2015 and, in order to help offset any financial stress caused by the phasing out of the ACB, ALIC provided the option of advancing the ACB to Stilwell (and other EFSs) in August 2015 with the understanding that the EFS not terminate his ALIC relationship before January 1, 2016. A11-A12; A515-A518; A2039-40.

Stillwell opted to have both his LPB and ACB advanced to him on August 19, 2015. A11-A12. Accordingly, Stillwell was paid $34,875.00 for the LPB and $91,761.65 for the ACB, for a total of $133,558.53. *Id.*; A2041-A2042. These bonuses were paid to Stillwell with the understanding that he would not terminate his affiliation with ALIC before January 1, 2016. A11-A12; A515-A518.

Stillwell, however, terminated his EFS Agreement one month after receiving the bonus (September 11, 2015). A153. As a result, Stillwell's ACB and LPB bonuses were "unearned," and ALIC, in accordance with its rights, deducted the LPB and ACB amounts ($133,558.53) from Stillwell's post-termination commissions. A12.

### C. Procedural History

ALIC commenced its action for damages and injunctive relief against Stillwell and SFA in the District Court on December 3, 2015. A109-A137. Shortly after filing suit, ALIC, Stillwell, and SFA agreed to an injunction whereby Stillwell would abide by the restrictive covenants and confidentiality obligations found in his EFS Agreement. A222-A224. Importantly, the injunction specifically stated that the parties were not prevented from seeking recovery of their attorneys' fees. *Id.* ALIC later amended its Complaint to assert a claim for breach of contract against Francy. A231-A268.

### i.    Resolution of the Motions for Summary Judgment

On December 7, 2018, ALIC moved for summary judgment as to liability on the following claims: breach of contract against Stillwell (Count I); misappropriation of trade secrets against all Appellants (Count III); tortious interference with ALIC's contractual relationships against SFA (Count IV); tortious interference with business relationships against all Appellants (Count V); unfair competition against all Appellants (Count VI); and breach of contract against Francy (Count VII). A231-A268. Appellants also moved for summary judgment on all seven of ALIC's claims and Stillwell's Counterclaim I for breach of contract. A750-A797. Both ALIC's Count II, for which it did not move for summary judgment,[1] and Stillwell's Counterclaim relate to the bonuses ALIC paid to Stillwell in August 2015. A218; A309-A310.

On May 16, 2019, the District Court ruled on summary judgment, and granted partial summary judgment to ALIC on all claims except for ALIC's tortious interference claim against the Appellants (Count V).[2] A29-A31. The District Court found that the following facts are undisputed:

---

[1] ALIC did not move for summary judgment on its claim to recoup unearned compensation from Stillwell (Count II) because ALIC had recouped the unearned compensation by withholding amounts equal to the ACB and LPB bonuses from Stillwell. A515-A517; A545.

[2] ALIC's Count V was later dismissed by joint motion of the parties. A1410.

16

(a)   Stillwell and Francy terminated their ALIC Agreements on or around September 11, 2015;

(b)   Stillwell contacted approximately fifty customers and informed them that he had joined Ameriprise;

(c)   the announcements made by Stillwell and Francy to ALIC customers listed their ALIC address and, as such, Stillwell and Francy were conducting business for SFA and Ameriprise at their ALIC location for at least one month after they terminated their ALIC Agreements;

(d)   Appellants failed to return at least some of ALIC's confidential information since the customers on the Announcement and Database lists taken from Appellants' computers were, at least in part, ALIC customers;

(e)   Appellants solicited customers, including the Munoz Family company and the Byrnes family, to leave ALIC for SFA; and

(f)   some clients of SFA as of January 2017 had previously purchased products from Stillwell while he was affiliated with ALIC, which is within the one year non-solicitation provision of their Agreements.

A6-A9.   The District Court determined that, based upon these specific facts, Appellants breached their ALIC Agreements and misappropriated ALIC trade secrets.  The District Court also called the Appellants' defenses in opposition to summary judgment "absurd." A17.

The District Court further granted summary judgment to ALIC on Count II as to the LPB and to Stillwell as to the ACB.  *Id.* The District Court, however, denied Stillwell prejudgment interest on his counterclaim due to his illegal acts and conduct. A28 ("Stillwell has violated his own contractual obligations to [ALIC] and has

misappropriated [ALIC]'s trade secrets.  The equitable doctrine of unclean hands thus counsels against an award of prejudgment interest.").

Appellants filed a motion for reconsideration of the District Court's  summary judgment ruling on May 30, 2019.  The motion rehashed the same arguments from Appellants' original briefing and the District Court summarily denied the Motion. A32-A39; A1291-A1311.

After summary judgment, the parties entered into a confidential settlement agreement, whereby the parties stipulated to dismissal of the remaining claims and foregoing a trial on damages for the claims on which there was a finding of liability. A1405-A1410; A2400-A2410.

### ii.     Resolution of the Motions for Attorneys' Fees and Costs

The parties then proceeded to post-judgment findings on attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54.2.  A1410. ALIC sought reimbursement of its attorneys' fees and costs in the amounts of $519,347.60 and $15,096.21, respectively.  A1417-A1479.  The Clerk subsequently entered an Order awarding ALIC $11,823.70 in costs.  A40-A54.  The Appellants filed a Motion to Vacate the Clerk's Order, which the District Court rejected.  A55-63; A1684-A1709.  In doing so, the District Court found that "ALIC has achieved some of the benefits that it sought in bringing suit and that the Clerk correctly found that [ALIC] is the prevailing party in this litigation."  A63.  Later, the District Court

awarded ALIC with $481,607.10 in attorneys' fees, which it determined was reasonable, after a reduction under the lodestar method.    A64-80; *id.* at A76 ("This sum reflects the reasonable hourly rates charged by the… attorneys, the 20% fee discount as to [ALIC]'s attorneys' work at the summary judgment stage, and the exclusion of fees related to unreasonable time expended.").

The Appellants filed a Notice of Appeal on January 5, 2023, and ALIC filed its Notice of Cross Appeal on January 19, 2023.  A81-A83; A1416.

### D.    Rulings Presented For Review

Appellants present the following for review: (a) the May 16, 2019 summary judgment opinion and order (A1-A31); (b) the July 24, 2019 opinion and order regarding the motion for reconsideration of the summary judgment opinion and order (A32-A39); (c) the December 28, 2021 Clerk's Order regarding ALIC's motion to tax costs (A40-A54); (d) the August 8, 2022 opinion denying the motion to vacate the Clerk's order (A55-A63); and (e) the December 6, 2022 opinion and order regarding ALIC's motion for attorneys' fees (A64-80).

ALIC is presenting the May 16, 2019 summary judgment opinion and order (A1-A31) for review.

# SUMMARY OF THE ARGUMENT

The District Court correctly granted summary judgment to ALIC on the majority of its claims because there were no genuine disputes of material facts. *First*, the District Court appropriately determined that Stillwell was only entitled to the LPB payment if he was active at the end of the bonus period, which he was not. *Second*, the District Court properly analyzed the evidence surrounding the confidential ALIC customer information Appellants stole from ALIC, and Appellants solicitation activity, to correctly grant summary judgment to ALIC on its breach of contract and trade secret claims. *Third*, the District Court appropriately determined that ALIC was the prevailing party and entitled to its attorneys' fees and costs. In doing so, the District Court accurately awarded ALIC the attorneys' fees and costs to which it was entitled.

*Finally*, the District Court incorrectly granted summary judgment to Stillwell as to the ACB bonus (Counterclaim I) because the bonus was not "earned" by Stillwell unless he remained affiliated with ALIC through the end of 2015. Since Stillwell terminated his affiliation with ALIC on September 15, 2015, Stillwell was not permitted to retain the ACB bonus. The District Court, therefore, erred by failing to consider testimony about when such bonuses were earned, as opposed to when such bonuses were paid.

# ARGUMENT

I.  **The District Court Correctly Granted Summary Judgment To ALIC On Counts I-IV, VI, and VII And Incorrectly Granted Summary Judgment to Stillwell As To Counterclaim I.**

A.  **Scope of Review**

The Third Circuit exercises plenary review over summary judgment decisions and applies the same test as the district court. *Philadelphia and Reading Corp. v. United States*, 944 F.2d 1063, 1070 (3d Cir. 1991); *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993). Hence, the Appellate Court will affirm a summary judgment ruling if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

B.  **The District Court Correctly Granted Summary Judgment To ALIC As To The LPB (Count I of Counterclaim).**

The District Court correctly granted summary judgment to ALIC for the LPB because there was no genuine dispute of material fact, and ALIC was entitled to judgment as a matter of law.  Summary judgment will be affirmed where "the contract is unambiguous and the moving party is entitled to judgment as a matter of law." *Tamarind Resort Assocs. V. Gov't of Virgin Islands*, 138 F.3d 107, 110–11 (3d Cir. 1998). The Third Circuit "embrace[s] the basic common law principle that a

21

contract is unambiguous if it is reasonably capable of only one construction." *Id.*; *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418–19 (3d Cir. 2013).  In deciding whether a contract is ambiguous, the Court "must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 164 (3d Cir. 2001) (internal citations omitted).

The District Court properly determined that the EFS Supplement, which detailed the terms of the LPB, was unambiguous.  The EFS Supplement provides that the LPB is calculated annually at the end of each calendar year and is based on the amount of credits an EFS earned on production they wrote the previous calendar year.  A1967.  However, the EFS Supplement requires that an "EFS must be active at the end of the bonus period to receive credits for that period." *Id.*  This provision is unambiguous: an EFS "earns" the LPB bonus at the end of the calendar year, or the end of the bonus period, regardless of when the LPB is paid to the EFS. A520; A2044.

In August 2015, ALIC paid Stillwell an advance of his LPB to offset any financial strain that may be caused by the ACB program's sunsetting.  A525; A543. Nothing about this advance changed when an EFS would "earn" his LPB.  Indeed, by Appellants' own admission, "The LCB [sic] … was a separate and distinct *advance* of his normal LCB [sic] payout that he would have received in January 2016

but for the accelerated payout." A2048 (citing A518 at 48:10-20) (emphasis added). Naturally then, the District Court correctly determined that "Defendant Stillwell was entitled to the LPB payment only if he was active at the end of the bonus period." The bonus period ended on December 31, 2015. Since Stillwell terminated his affiliation with AFS before December 31, 2015, he "was not entitled to the LPB payment and is required to repay it." A26. The District Court's interpretation is the only reasonable interpretation of the EFS Supplement, and the District Court correctly decided this issue.

Appellants' interpretation of the EFS Supplement is therefore equally unavailing and strained. Appellants support their main argument – that Stillwell is entitled to the Advanced LPB because he was active at the end of the 2014 bonus period – by parsing the language of section 4.2. Appellants' Br. at 29-33. Put differently, Appellants are picking and choosing which sentences "apply to the Accelerated LPB" in order to achieve their desired outcome. *Id.* This construction is purely self-serving, unreasonable and not supported by the record.

Section 4.2 provides,

[1] The bonus credits from the Life Production bonus will be allocated to the bonus pool for each calendar year that the production level qualification was met. [2] In January of the following year, 25% of the accumulated credits are paid out in an annual bonus. [3] The bonus will be paid each year there is a credit balance, even if an EFS does not qualify for additional bonus credits in that calendar year. [4] EFS must be active at the end of the bonus period to receive credits for that period. [5] EFSs who qualify for a bonus at the end of the bonus period will

23

> receive a bonus payment, even if the EFSs L2000 Agreement
> terminates prior to the payment of the bonus…

A1967.  The meaning of the first two sentences is undisputed by the parties. *See,
e.g.,* Appellants' Br. at 30.  Appellants lobby that the fourth sentence does not apply
to the Accelerated LPB, while the third and fifth sentences "unambiguously" support
their interpretation that Stillwell is entitled to the LPB. *Id.*  This is nonsensical, and
Appellants actually contradict themselves while making this argument to the Court.

Specifically, Appellants first argue that "the language relied on by the District
Court that 'an EFS must be active at the end of the bonus period to receive credits
for that period' [Supplement 4.2] *d[oes] not apply* to the Accelerated LPB… because
that bonus was based on Stillwell's 2014 LPB pool balance, not on any credits earned
in 2015." Appellants' Br. at 30 (emphasis added).  Yet, two paragraphs later,
Appellants argue that *"[t]he applicable language* of Supplement 4.2 *unambiguously
dictates* that Stillwell is entitled to retain the Accelerated LPB based on his 2014
bonus credits." Appellants' Br. at 31 (emphasis added).  Regardless of Appellants'
contortions, the fourth sentence of Section 4.2 makes clear that an EFS is entitled to
LPB only if the EFS is active at the end of the bonus period (*i.e.*, the end of the
calendar year).  A1967.  The provision of the Supplement must be viewed in totality,
and Appellants provide no justification for why their selective reading/omission is
appropriate, let alone logical.   How the same contractual provision can
simultaneously "not apply" but also "unambiguously dictate[]" Appellants' desired

outcome is puzzling to say the least.  Appellants are talking out of both sides of their mouth.

Moreover, there is no support in the record for Appellants' argument that the Accelerated LPB was based on Stillwell's 2014 LPB pool, rather than 2015. Appellants' Br. at 30 (citing A525; A543-544; A1302-1303; A2046).  None of the record pages cited stand for the proposition that the LPB was earned in 2014 or that Stillwell was entitled to retain the LPB if he remained at ALIC through the end of 2014. *See* A1967-A1968.  Moreover, Appellants cite to their *own* district court filing to support this argument. *See* A1302-A1303.

Appellants' line that "[t]he District Court itself acknowledged that Stillwell's reading of the contractual language was 'plausible'" is similarly misleading. Appellants' Br. at 33 (citing A36 n.1). This quote was about an interpretation that Appellants offered for the first time in their reply brief in support of their motion to reconsider, not on summary judgment.  In their reply brief, they argued that the fourth sentence in Section 4.2 meant that an EFS must be active in order to accumulate new credits for the year, but they can still receive a bonus based on the previous years' credits. A1338; A36 n.1.  Although the District Court acknowledged that this was "plausible," Appellants abandoned this interpretation on appeal and instead now argue that this sentence is "inapplicable." In any event, it is up to this Court to decide whether Appellants' interpretation is plausible (it is not).

Finally, Appellants contend that they are entitled to summary judgment on this issue because ALIC (1) never moved for summary judgment on Count II and (2) "never made the argument adopted by the District Court" regarding the LPB. Appellants' Br. at 30-31.  Both arguments are false.  *First*, ALIC did not move for summary judgment on Count II because it had already been made whole by offsetting the tenure interest payment with the Accelerated LPB. As the District Court noted, because Appellants had an opportunity to argue their interpretation of the Supplement in their own motion for summary judgment, "This is not the kind of situation contemplated by Rule 56(f)(2) where a party had summary judgment sprung upon it without the opportunity to argue its side of the case." A35; *see also Gibson v. Mayor of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004) (finding *sua sponte* grant of summary judgment appropriate when point at issue was purely legal, record was fully developed, and failure to give notice did not prejudice the party).

*Second*, Appellants admit that "ALIC relies on Sections 4.2 and 4.3 of the Supplement and Section XV.C of the EFS Agreement [to support] its position." A794; *see also* A2049 ("ALIC's position is that Stillwell was not entitled to receive both the Accelerated LPB and the Tenure Interest because he did not remain an active EFS until January 2016… ALIC relied on Sections 4.2 and 4.3 of the Supplement to support the decision to offset the Tenure Interest owed to Stillwell with the Accelerated LPB paid to Stillwell in August 2015."). Accordingly,

Appellants are well aware of ALIC's reliance on Sections 4.2 and 4.3 of the Supplement.  They are also aware that Sections 4.2 and 4.3 reject their position and, consequently, Appellants fail to demonstrate that they are entitled to judgment as a matter of law.[3]

### C.    The District Court Correctly Granted Summary Judgment To ALIC On Its Summary Judgment Claims Because No Factual Disputes Existed.

A factual dispute is *genuine* if a reasonable jury could return a verdict for the non-movant, and *material* if, under the substantive law, it would affect the outcome of the suit.  *See Anderson*, 477 U.S. at 248.  The moving party must show that the non-moving party has failed to "set forth," by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."  *See Beard v. Banks*, 548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).  "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict."  *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

---

[3] In the alternative, if this Court were to find that there was an ambiguity in the language, or that Appellants' arguments are compelling (which they are not), then summary judgment should be reversed, and the issue should proceed to trial. *Mylan*, 723 F.3d at 418–19.

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  To survive a motion for summary judgment, a non-movant must present more than a mere "scintilla of evidence" in his favor. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita Elec.*, 475 U.S. at 586-87 (internal citations omitted).

ALIC successfully demonstrated, and the Court correctly found, that there were no genuine issues of material fact as to Stillwell and Francy's breach of their Agreements and Appellants' misappropriation of ALIC confidential information/trade secrets.  Drilling down further, the District Court correctly concluded that no reasonable jury could find that the origin of the "Announcement List" came from anywhere other than ALIC or that the announcements sent by Appellants to ALIC customers from their former ALIC location were prohibited solicitations.  And even if these facts were in dispute, there are numerous additional and independent bases for granting summary judgment to ALIC.[4]

---

[4] If this Court were to believe Appellants' arguments (which it should not), then ALIC's Counts I, III, VI, and VII should be remanded to the District Court for trial

Specifically, the District Court pointed out the following undisputed facts: (a) Stillwell and Francy terminated their ALIC Agreements on or around September 11, 2015; (b) the Appellants operated out of their former ALIC location for at least one month and, while still in their ALIC location, contacted approximately fifty customers and informed them that they were leaving ALIC for Ameriprise and SFA; (c) the announcements made by Stillwell and Francy listed the ALIC address, meaning that they were conducting business for SFA and Ameriprise at their ALIC location; (d) the customers on the Announcement and Database lists taken from Appellants' computers were at least in part, ALIC customers, meaning that Appellants failed to return at least some ALIC confidential information, as required by their ALIC Agreements and the law; (e) Appellants solicited customers, including the Munoz Family and the Byrnes family, to leave ALIC for SFA, meaning that they violated their Agreements' solicitation provisions; and (f) some clients of SFA as of January 2017 had previously purchased products from Stillwell while he was affiliated with ALIC, which is within the one year non-solicitation provision of their Agreements. A6-A9. Thus, there are several independent bases on which the District Court based its conclusions that Appellants breached their ALIC

---

as there are no undisputed facts that would support Appellants' prevailing on summary judgment.

Agreements, regardless of the origins of the Announcement List or whether Appellants' announcements were solicitations under the ALIC Agreements.

Moreover, the District Court correctly recognized the implausibility of Appellants' defenses to each of these facts and noted that Appellants' explanations were "absurd." A17. Simply put, there is no reasonable dispute that the Announcement and Database lists contain ALIC confidential information, or that Appellants stole this information in order to use the information to solicit ALIC customers (and justify Stillwell's six figure signing bonus). *See* A1319-A1320. This Court should, therefore, affirm the District Court's ruling on these decisions.

### i.      There Is No Genuine Dispute Of Material Fact As To The Origin Of The "Announcement List."

Appellants claim that the District Court erred in finding that the Announcement List came from an ALIC database because there is "substantial record evidence that the Announcement List was created by Stillwell and Francy from memory and publicly available sources." Appellants' Br. at 26. In truth, however, the "substantial record evidence" is not substantial, genuine, or material, and this argument was easily rejected by the District Court. It should likewise be rejected by this Court.

As a preliminary matter, even if Stillwell and Francy were able to establish that the "Announcement List" came from memory and public sources (which they cannot), the "Announcement List" is only a fraction of the ALIC confidential

information  they retained and has little overall effect on Appellants' liability.

Specifically, Stillwell and Francy stole the following from ALIC:

- Client backup folders for individual ALIC customers;

- An ALIC Customer Contact List that was last modified on September 17, 2015 (*i.e.*, one week after they terminated their relationship with ALIC and Stillwell claimed not to be in possession of ALIC Confidential Information);

- A list of Client Brokerage Accounts that contained names, addresses, and contact information for ALIC customers with brokerage accounts;

- A list of ALIC customers with life insurance policies that included the referring agent and specific policy information for each customer;

- An internal ALIC database—AccessAllstate—that contained files for contact lists, contact status, and birthday lists.  This information was downloaded on September 10, 2015, one day before termination of their relationship with ALIC;

- An entire ACT!$^{TM}$ database of ALIC customer information for Stillwell's book of business with ALIC, including notes of conversations with customers and recommendations to those customers of products and services;

- A "Holiday List" created from the ACT!$^{TM}$ database.  The "Holiday List" contained over 2,000 names from Stillwell's ALIC book of business for fixed products, including life insurance and annuities.  This list was created in mid-August 2015, the same time that Stillwell was planning to move to Ameriprise.

A478-A479; A1080; A1203-A1205; A1211; A1869-A1916; A1939-A1943; A2003-A2005; A2117-A2119; A2126-A2209.[5]  Importantly, the Announcement List, and by extension, the Database List, were found to be embedded within this information.

---

[5] For summary judgment purposes, ALIC only relied on the undisputed confidential information that was used by Appellants.

A1318; A1939-A1943; A2126-A2209.  Neither Stillwell, nor Francy, could explain how the Announcement list and Database list were found in the ALIC confidential information that both admit to stealing.  A472; A1184; A1315-A1316.

But Stillwell and Francy **admit** that ALIC customer names and contact information are ALIC confidential information.  A475; A1080; A1189-A1190; A1203-A1205; A1211; A1319-A1320.  They also admit that this information is specifically identified as ALIC "confidential information" under the ALIC Agreements.  *Id.*  Consequently, it is beyond dispute that Stillwell and Francy retained the Announcement List and Database Lists, the information contained therein is ALIC confidential information, and Appellants breached their ALIC Agreements and the NJTSA by retaining and failing to return this information after their ALIC relationship terminated.

Accordingly, the "substantial record evidence" that Appellants proffered to support their arguments—that the Announcement List was created from memory and public sources and the Database List did not come from ALIC's database—does not bolster Appellants' arguments. Appellants' Br. at 36.  Moreover, it is important to note that although Francy suggested that the Announcement List came from public sources, she could not testify how long it took to create the list, when she started the list, or how often she worked on the list before it was completed.  A472; A1184; A1315-A1316.  She also had no explanation for how the Announcement List was

32

found among the ALIC information that she downloaded from ALIC databases. A1318.  Nor could Francy explain how the Announcement List became identical in content, font, and format to the Database List, which was downloaded (*i.e.*, stolen) by Francy from ALIC's systems.  A1869-A1916; A1939-A1943; A2003-A2005; A2115-A2116 at 73:21-74:24, 76:8-16; A2126-A2209.  Given all of the above undisputed facts, Francy's statements cannot defeat summary judgment.  *See Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) ("conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."); *Lucas v. Romito*, 2017 WL 4125756, at *6 (D.N.J. Sep. 18, 2017) (holding party's self-serving affidavit was insufficient to create a genuine issue of material fact to survive summary judgment).

Without any further proof from Appellants as to the origin of the Announcement List, the District Court properly compared the Announcement list to another list that Appellants admit was stolen from ALIC (which the District Court referred to as the "Database List").  A7.  The District Court accurately found that both lists: (a) contain approximately 150 names of clients, along with each client's address, city, state, and telephone number; (b) contain columns in the same order; (c) use the same font; (d) contain a shorter list called CONTROLLED BUSINESS; (d) are alphabetized by last name, but contain the same two clients and two controlled businesses at the end of the list that are not alphabetized; and (e) list the

last two names on the controlled business section surrounded by vertical borders while other names in that section are not.  A7-A8.  Thus, the District Court concluded that it was implausible, if not impossible, that the two lists are distinct.  A17.

The District Court also directly addressed the Appellants' defenses that the Announcement List was created from memory and public sources, and found these defenses to be "absurd."  A17.  Thus and while some of the information contained in the lists may be obtainable from public sources, it is implausible that any person, even with the internet, could accrue 150 of ALIC's customers and all of their contact information from public sources.  For example, the Announcement List contains ALIC customer names, addresses, primary and secondary phone numbers, as well as handwritten notes.  A1939-A1943.  In addition, the Database List contains ALIC customer names, addresses, primary and secondary phone numbers, as well as email addresses for some customers.  A2127-A2145.

It is similarly unconvincing, that these lists could be constructed from memory, considering the volume of information and the limitations on the average person's memory.  Lastly, it defies reason, as well as common sense, that Stillwell and Francy would retain reams and reams of confidential ALIC customer information but not use that information in preparing their "Announcement."  Put more bluntly, it is simply absurd to argue, much less believe, that Stillwell and

Francy stole large amounts of confidential ALIC customer information but did not use that information to solicit and/or attempt to solicit ALIC customers.

Accordingly, no reasonable factfinder could reach Appellants' conclusion that Appellants used public sources to compile complete information for each of the 150 customers. *Suncoast Tours, Inc. v. Lambert Grp., Inc.*, No. CIV. A. 98-5627 (JEI, 1999 WL 1034683, at *8 (D.N.J. Nov. 10, 1999)) ("Even if defendants could assemble a similar list of customers using public sources, it could not assemble a list of recent… customers through such sources.") (citing *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 666 A.2d 1028, 1038 (N.J. Super. Ct. Law Div. 1995)). Nor could a reasonable fact finder conclude that Appellants used *memory* to construct the complete customer lists and contact information. Thus, and despite Appellants allegations to the contrary, the District Court neither categorically rejected Appellants' evidence nor made evidence weight or credibility determinations. Rather, the District Court considered the evidence proffered by the parties, and correctly determined that Appellants' defenses were "absurd," and the proffered evidence was not genuine or material. *Beard*, 548 U.S. at 529.

Appellants further argue that the Database List did not come from an ALIC database, but rather, was a list of "Brokerage Accounts." Appellants' Br. at 40. Once again, Appellants offer no proof as to the origins of the "Database List," other than it being created from memory and public sources and pertaining to "Brokerage

Accounts." *Id*.  Appellants also conveniently ignore Francy's acknowledgements that (a) the Database List was "ALIC property" as the information was contained within an ALIC spreadsheet, and (b) the Database List contained names of ALIC customers along with their addresses, primary and secondary phone numbers, as well as email addresses for some customers.   A1319 at 78:15-79:10; A2127-A2145. Given these admissions, the Database List should not have been in Appellants' hands, regardless of its origins.

Appellants also conveniently ignore the fact that they originally did not contest Appellants' statement that the Database List was "generated from [ALIC's] database."  A36.  It was only after the Appellants lost on summary judgment that they created/raised this issue.  *Id*.  Further, Appellants ignore the other forensic evidence found on their computers, including other ALIC customer lists, which were modified after their relationship was terminated; the BoB folder accessed on October 7, 2015; and the ACT!$^{TM}$ database of ALIC customer information.  A478-A479; A1186-A1190.

Thus, even if this Court is persuaded by Appellants' defenses (which it should not be) that the Database and Announcement Lists were compiled from memory and public sources, and/or the Database List did not come from an ALIC database (which it did), this Court still has a basis for entering summary judgment in favor of ALIC. More specifically, the other evidence, coupled with Francy's deposition testimony,

is more than enough circumstantial evidence to conclude that the Appellants retained ALIC's confidential information in violation of their ALIC Agreements and misappropriated ALIC's trade secrets. *Stella v. Department of Education*, 367 F. Supp. 3d 235, 248 (D. Del. 2019) (in considering motions for summary judgment, the court must treat direct and circumstantial evidence the same); *see also York Grp., Inc. v. Pontone*, 2014 WL 896632, at *13 (W.D. Pa. 2014) (holding moving party presented sufficient circumstantial evidence of solicitation in breach of contract to permit a reasonable trier of fact to draw such an inference, warranting summary judgment). Therefore, Appellants' defenses about the Database List are not material and do not defeat summary judgment.

> ### ii.     There Is No Genuine Dispute Of Material Fact As To Whether The Announcements Were Prohibited Solicitations.

Appellants contend that the District Court further erred by concluding that the customer announcements sent by Stillwell and Francy amounted to "solicitations" in violation of their ALIC Agreements. Appellants contentions are logically bankrupt and, as the District Court put it, legally "absurd."

*First*, Appellants claim that the solicitations are permissible because they only list Stillwell's new affiliation and contact information. Appellants' Br. at 42. They point to a handful of cases from around the country purporting to show that the announcements are not "solicitations." *Id.* As a preliminary matter, the cases Appellants cite are not binding on this Court (or the District Court). The cases are

also not applicable, apart from being based on injunctions instead of summary judgment motions. For example, in *Edward D. Jones & Co., L.P. v. Kerr*, 415 F. Supp. 3d 861, 866-871 (S.D. Ind. 2019), the court rejected the plaintiff's assertion that the defendant was soliciting plaintiff's clients because counsel for plaintiff *conceded* it had no evidence to support those claims. Similarly unavailing, in *UBS Financial Services, Inc. v. Christenson*, No. CIV. 13-1081 MJD/JSM, 2013 WL 2145703 (D. Minn. May 15, 2013), the plaintiff and the defendant's new employer were both signatories to an agreement that allowed representatives to freely solicit their former clients. *Id*. At *3. Likewise, in *Bank of America Investment Services, Inc. v. Byrd*, No. 2:09CV211, 2009 WL 10184606 (E.D. Va. June 15, 2009), the plaintiff's evidence showed that no customers were lost as a result of the solicitations made by defendant. None of the circumstances of these cases are applicable to the facts at hand.

To the contrary and as stated under controlling New Jersey law, Appellants' announcements were solicitations because they were for the benefit of Stillwell, Francy, and SFA and in violation of the ALIC Agreements. *Lamorte Burns & Co. v. Walter*s, 167 N.J. 285, 309, 770 A.2d 1158, 1172 (2001). The announcements contained Appellants' address (the former ALIC address), phone number, and email address. The announcements initiated contact with a customer so that customers could contact Stillwell and Stillwell could then solicit the customer. Those

solicitations indisputably caused ALIC to lose customers to SFA.  A988; A1060; A1066; A1868.  Moreover, from a logical perspective, and given the large amount of money Ameriprise was paying Stillwell, the only reason for Stillwell to send out "announcements" was to solicit ALIC customers to SFA.  There is also only one reason for Stillwell to visit the Byrnes house shortly after his termination and that reason is to solicit Mrs. Byrnes to leave ALIC for SFA and Ameriprise.  A1945-A1948; A2123-A2124.[6]

**Second**, Appellants claim that they sent the announcements to ALIC's customers because Stillwell wanted to "protect… against potential customer complaints by ensuring that his AFS brokerage clients… could reach him if an issue arose."  Appellants' Br. at 43.  This defense, however, does not absolve Appellants from liability because Stillwell's intentions in sending the solicitations are not pertinent to whether he violated his EFS Agreement.  *Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (listing elements for breach of contract, of which intent is not an element).  Likewise, Appellants' supposed intention to only solicit AFS clients does not absolve the Appellants of the solicitations they made to ALIC clients, whether inadvertent or

---

[6] This activity also constitutes "solicitation" outside of New Jersey.  *See, e.g.*, *H&R Block E. Enterprises, Inc. v. Morris*, 606 F.3d 1285, 1294 (11th Cir. 2010) (applying Georgia law); *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 190-193 (S.D.N.Y. 2011) (applying New York law).

intentional. There is no contractual provision that allows for inadvertent (or intentional) solicitation of ALIC's customers. Nor is there any case law supporting such a defense.

Accordingly, this Court should reject Appellants' flimsy defenses and affirm the District Court's findings with respect to the Announcement List, Database List, and announcements.

> **D.      The District Court Correctly Granted Summary Judgment To ALIC As To Breach of Contract Against Stillwell and Francy (Counts I and VII).**

Appellants further claim that the District Court erred in failing to apply the reasonableness requirements for restrictive covenants under New Jersey law, and as a result, the Court improperly found that Stillwell and Francy breached their ALIC Agreements. Specifically, Appellants contend that ALIC should have shown, and the District Court should have weighed, whether the one-mile prohibition on solicitation was necessary to protect ALIC's legitimate interests, caused undue hardship on Stillwell or Francy, and is against the public interest.[7] Appellants' Br. at 39.

New Jersey law is clear that companies have a legitimate interest in protecting current and prospective customer relationships. *HR Staffing Consultants LLC v.*

---

[7] Appellants raised this issue for the first time in their Motion to Reconsider the District Court's Summary Judgment Opinion. A1308-A1310.

*Butts*, 627 F. App'x. 168, 172 (3d Cir. 2015). A company can protect customer relationships that it, "either directly or indirectly, assist[ed] in developing." *Chemetall US Inc. v. Laflamme*, Civil Action No. 16-780 (JLL), 2016 WL 885309, at *13 (D.N.J. Mar. 8, 2016). There is no question that ALIC assisted in the development of all customer relationships Stillwell had while at ALIC, especially since (a) Stillwell did not bring any customers to ALIC when he joined in 2008; and (b) it was ALIC's specialized life insurance products and services that Stillwell sold to those customers. A1074-A1077. It follows then, that ALIC has a legitimate interest in protecting current and prospective customer relationships, in addition to its confidential information. *Lamorte Burns*, 770 A.2d at 1167 (employer's confidential information constituted a legitimate business interest).

Moreover, New Jersey courts routinely enforce similar restrictions, holding that these restrictions are narrowly tailored to protect a company's legitimate business interests. *See Cmty. Hosp. Grp., Inc. v. More*, 183 N.J. 36, 869 A.2d 884, 897 (2005) (enforcing a two-year covenant covering a thirty-mile radius); *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 666 A.2d 1028, 1040 (N.J. Super. Ct. Law Div. 1995) (enforcing a restrictive covenant with a one-year term); *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222, 224-25 (D.N.J. 2009) (employer's confidential information and its relationships with its customers were a legitimate protectable interests for enforcing one-year, 50-mile restriction).

Additionally, similar restrictive covenants have not caused an undue hardship on former agents. *Solari Indus. v. Malady*, 264 A.2d 53, 60-61 (N.J. 1970); *Platinum Mgmt., Inc.*, 666 A.2d at 1040. Finally, it is well-settled in New Jersey that enforcement of the provisions of a restrictive covenant do not impair the public interest, but instead promote it. *Nat'l Reprographics*, 621 F. Supp. 2d at 230 ("enforcing reasonable terms of an employment agreement is within the public interest").

Therefore, the restrictive covenants contained in the ALIC Agreements are valid and enforceable, and Appellants' arguments contesting the reasonableness of these restrictions should again be rejected. If, however, the District Court did commit some error by not explicitly analyzing the reasonableness of the ALIC Agreements' restrictive covenants, there are numerous bases for the District Court's conclusion that Stillwell and Francy breached their ALIC Agreements. Those bases include, but are not limited to: (a) Stillwell and Francy worked with Ameriprise while they were still operating in the Freehold office (*i.e.*, their former ALIC location); (b) Stillwell and Francy sent out numerous customer solicitations as representatives of Ameriprise from the Freehold address; (c) Stillwell and Francy retained, accessed, and used ALIC confidential information after terminating their ALIC Agreements; (d) Stillwell and Francy failed to return ALIC confidential information after terminating their ALIC Agreements; (e) Stillwell and Francy

disclosed ALIC confidential information to leverage substantial compensation for themselves; (f) Stillwell and Francy solicited customers to leave ALIC for SFA, including the Munoz Family, Mrs. Byrnes, and other customers worth hundreds of thousands of dollars in premiums; and (g) Stillwell and Francy solicited other ALIC customers.  A6-A9; A14-A18.

For these reasons, the District Court did not err in finding that Stillwell and Francy breached their ALIC Agreements.

### E.    ALIC Is Entitled To Summary Judgment As To The ACB (Counterclaim I).

The District Court correctly granted summary judgment to ALIC regarding the LPB payment (Stillwell's Counterclaim I) but, respectfully, incorrectly granted summary judgment to Stillwell regarding the ACB payment.  A26-A28.

The EFS Supplement specifies the requirements and terms of the ACB bonus, and differentiates between "earning" and "receiving" the ACB bonus.    A515; A1970-A1971.  Like the LPB, an EFS must be active at the end of the ACB bonus period to "earn" the credits (*i.e.*, the bonus) for that period.  A515-A524.  For the ACB (and the LPB), the bonus period coincides with the calendar year.  *Id.* Consequently, the ACB bonus is only "earned" if the EFS is affiliated with ALIC through the end of the calendar year.  A520-A521; A1970.  Naturally then, the bonuses are typically paid to the EFSs in January of the following month (*i.e.*, after the bonus has been earned).  For example, an ACB bonus period ending on

December 31, 2015 is normally paid to the EFSs in January 2016 or soon thereafter. *Id.* If an EFS is not affiliated with ALIC at the end of the calendar year, the ACB is "unearned" and must be paid back. A515-A517, A520-A524. Thus, there is a difference between "receiving" the ACB payment and "earning" the ACB payment. A520-A521; A524.

As explained in Section I.B., the ACB was advanced to EFSs (including Stillwell) in August 2015—in order to offset the any financial strain caused by the programs' sunsetting. It was understood, however, that the ACB must still be "earned" by remaining affiliated with ALIC through the end of the calendar year (*i.e.*, December 2015). A516-A522. Consequently, when Stillwell received his ACB advance in August 2015, but terminated his affiliation with ALIC prior to January 2016, he was required to pay back ALIC for the ACB. A515-A517, A520-A524. These terms in the Supplement are clear and unambiguous.

Respectfully, the District Court failed to appreciate the difference between "receiving" the ACB bonus and "earning" the ACB bonus in light of the advance to Stillwell. In doing so, the District Court noted that "[t]his is a difficult question… [and] [r]easonable minds may differ on the proper interpretation; the language in the Supplement and in Plaintiff's later correspondence could be used to support either conclusion" about whether Stillwell was entitled to the ACB. A27. This admission

by the District Court demonstrates that there was a fact issue preventing summary judgment.

To "resolve" the issue, the District Court examined outside evidence, but still did not analyze the issue correctly. For example, the District Court examined the following June 30, 2015 email from Allstate employee, Yaroslava Teliatinskaya, to Stillwell:

> You are receiving this message because you need to make a decision about the timing of bonus payouts for which you are eligible.
>
> Normally, Assets Captured Bonus (ACB) and Life Production Bonus (LPB) are **distributed in January**.  This year, payouts will be accelerated in August to help offset any financial implications you may experience as a result of the sun-setting of advanced compensation on August 1…
>
> What you need to do:
> - Decide if you prefer to receive your payout in **August (accelerated) or January (normal)**…
>
> - If you do not want to receive the accelerated August payment, please reply to this e-mail by July 31, 2015 and simply indicate "I wish to opt out"…
>
> What you need to know about the **August accelerated** payout:
>
> - This **advanced** payout will be **reconciled against your normal payout at the beginning of 2016**; any incremental differences… will be paid in early 2016
>
> Note:  … You must be active at the time of payout (August 19) and not be carrying a debit balance as of July month-end to receive the **advance** payment.

A543 (emphasis added); A720-A722.  This email is consistent with the testimony of Paul Lanspa, the drafter of the EFS Supplement, who testified that Stillwell was active at the time he received his ACB "advance… but it was not earned until January 2016."  A520-A521; A524 (emphasis added).  Importantly, however, Ms. Teliatinskaya's email does not mention—and therefore cannot alter—the date on which the ACB was "earned."  A27-28; A515-A524; A543.

Based on Ms. Teliatinskaya's email alone, the District Court concluded that there was an ambiguity "in [the] written agreement" with respect to what constitutes the "time of payout" that must be "construed against the draftsman," ALIC.  A27-A28.    In reaching its conclusion, however, the District Court failed to consider the testimony of Mr. Lanspa, as well as other evidence presented by ALIC relating to when the ACB credit is earned by the EFSs, including Stillwell.  For example, the District Court disregarded email correspondence wherein ALIC discussed recovery of the unearned ACB payments.  On September 12, 2015, one day after Stillwell's termination, an email from Paul Lanspa states, "By him terminating now rather than in January, we will have to recover $95K of his accelerated bonus payment…" A532.

Moreover, the District Court never analyzed why or how Ms. Teliatinskaya's June 30, 2015 email became part of the "written agreement" such that it could render the terms of the EFS Supplement ambiguous.  Nor did the District Court explain, beyond two cursory case citations, why it decided this issue on summary judgment,

rather than leaving the issue for the fact finder. *See, e.g.*, *Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 574 (D.N.J. 2003) (citing *Pacitti v. Macy's*, 193 F.3d 766, 773 (3d Cir. 1999) and *Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 137 (3d Cir. 1993)) ("The Court's determination that the terms of the [contract] are ambiguous would ordinarily create a question of fact to be resolved by a jury."); *Michaels v. Brookchester, Inc.*, 26 N.J. 379, 387, 140 A.2d 199, 204 (1958) ("Ordinarily the construction of a written agreement is a matter for the court, but where its meaning is uncertain or ambiguous and depends upon parol evidence admitted in aid of interpretation, the meaning of the doubtful provisions should be left to the jury."). Rather, the District Court noted that this issue "was a difficult question" and relied on parole evidence to aid in the interpretation of the contract provisions. A27. The only time a District Court should avoid leaving the doubtful provisions to a jury, however, is when there is "overwhelming uncontradicted evidence" supporting a party's interpretation of a contract such that "[a] rational fact-finder could not conclude otherwise." *Teamsters Indus. Empls Welfare Fund*, 989 F.2d at 137. The District Court, by its own admission, acknowledged that is not the case here. A27 ("[r]easonable minds may differ on the proper interpretation").

This evidence demonstrates, at best, that the District Court should have awarded summary judgment to ALIC. The District Court therefore erred by (a)

concluding as a matter of law that the Supplement contained an ambiguity; (b) failing to explain how and why Ms. Teliatinskaya's June 30, 2015 email became part of the "written agreement"; and (c) failing to consider the evidence presented by ALIC that demonstrates a disputed issue of fact. At worst, these missteps demonstrate that there are genuine issues of material fact "that must be decided by the jury." *Great Atl. & Pac. Tea Co. v. Checchio*, 762 A.2d 1057 (N.J. App. Div. 2000) (citing *Michaels v. Brookchester, Inc.*, 140 A.2d 199 (N.J. 1958)). This Court should therefore reverse the District Court's conclusions on this issue and enter judgment for ALIC or, in the alternative, remand this aspect of Stillwell's Counterclaim I to the District Court for trial on this issue.

## II. The District Court Correctly Determined That ALIC Was The Prevailing Party And Is Entitled To Its Attorneys' Fees And Costs.

ALIC prevailed on five complete claims and one partial claim of its Amended Complaint. In doing so, the Court unequivocally found that Stillwell and Francy breached their contracts, misappropriated ALIC trade secrets, and engaged in unfair competition against ALIC. Indeed, Appellants' "defenses" to ALIC's claims were so outlandish that the District Court labeled the defenses "absurd." A17. Appellants were also enjoined from competing against ALIC and prohibited from using ALIC's trade secrets. Lastly, ALIC obtained a monetary judgment in connection with Stillwell's LPB bonus that allowed ALIC to continue withholding the $34,875.17 sought by Stillwell.

Nevertheless, and for at least the sixth time, Appellants argue that the District Court erred in concluding that ALIC was the "prevailing party."   The sole basis for Appellants' argument is Stillwell's monetary award exceeded ALIC's judgment on its claims.  As discussed below, Appellants' view attempts to assign a new standard for determining a "prevailing party", and is contrary to well settled law.  In truth, the party who obtains the higher dollar amount does not—and should not— automatically "win," especially when, as here, the other party (*i.e.*, ALIC) was successful on five of its six counts, achieved some of the benefits it sought in bringing the lawsuit, and also obtained a monetary reward.[8] A61; A63; A69; A70-A71.  Thus, and under the correct standard laid out by this Court, ALIC is clearly the prevailing party and the District Court correctly awarded ALIC its attorneys' fees and costs.

### A.    Scope of Review

Whether a party is a "prevailing party" for the purposes of awarding attorneys' fees and/or costs is a legal question subject to plenary review.  *Addie v. Kjaer*, 836 F.3d 251, 260 (3d Cir. 2016) (citation omitted); *Tyler v. O'Neill*, 112 F. App'x. 158,

---

[8] Appellants state that the District Court did not effectively distinguish *Warren Distrib. Co. v. InBev USA, LLC*, DKT No. CIV.A. 07-1053 RBK/J, 2011 WL 770005 (D.N.J. Feb. 28, 2011), but the District Court devoted a paragraph to explaining why the case was not applicable.  A61.  In *Warren*, the plaintiffs were not considered the prevailing party because the Court determined they were unjustly enriched by their wrongful conduct.  *Id*. at *5.  That is not the case here.

160 (3d Cir. 2004) (citing *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 926 (3d Cir. 1985)).[9]  However, the Third Circuit reviews the District Court's application of those legal precepts for abuse of discretion.  *Tyler*, 112 Fed. App'x. at 160.

### B.     Third Circuit Law Dictates That ALIC Is The Prevailing Party.

A "[p]laintiff may be considered [a] 'prevailing part[y]'… if [it] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Institutionalized Juvs.*, 758 F.2d at 910 (citing *NAACP v. Wilmington Med. Ctr., Inc.*, 689 F.2d 1161, 1167 (3d Cir. 1982)) (same).  To apply the prevailing party standard, "it is important to first identify the relief plaintiff sought and, in relevant cases, the legal theories on which the relief was based." *Id*. at 911.  "Usually a common-sense comparison between relief sought and relief obtained will be sufficient to indicate whether a party has prevailed." *Id.* (gathering cases).

The Third Circuit also "look[s] to the substance of the litigation's outcome," and "refuse[s] to give conclusive weight to the form of the judgment." *Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir. 1979).  For example, a plaintiff "prevails" when "the litigation successfully terminates by a consent decree, an out-of-court settlement, a

---

[9] The Third Circuit utilizes the same test for determining prevailing party status under Federal Rule of Civil Procedure 54(d) as it uses 42 U.S.C. § 1988. *Institutionalized Juvs.*, 758 F.2d at 926.

voluntary cessation of the unlawful practice by the defendant, or other mooting of the case when the plaintiff has vindicated his right." *Institutionalized Juvs.*, 758 F.2d at 912. Thus, a party may obtain prevailing party status even when "no judgment has been entered in that party's favor." *Ross*, 598 F.2d at 1322. Using this "common sense" approach, the District Court correctly looked to the substance of the litigation's outcome and determined that ALIC was the prevailing party for the following reasons.

***First***, ALIC succeeded on the majority of its claims and the most significant issues against the Appellants. The Court unequivocally found that Stillwell and Francy breached their ALIC Agreements, misappropriated ALIC's trade secrets, and engaged in unfair competition against ALIC. A14-A28. More specifically, the Appellants were found to have violated the NJUTSA and engaged in unfair competition by knowingly acquiring ALIC's trade secrets through improper means. A18-A26. The District Court further found that the Appellants wrongfully used and disclosed ALIC's trade secrets on behalf of themselves and Ameriprise. A18-A21, A23, A26. In total, ALIC succeeded on five complete claims and one partial claim, out of the seven claims it brought against the Appellants. As a result, ALIC achieved a substantial amount of the benefits it sought in bringing the lawsuit. *Institutionalized Juvs.*, 758 F.2d at 910. Put another way, ALIC clearly "vindicated its rights" as a result of the summary judgment ruling and the benefits ALIC received

aligns with the relief that ALIC sought. *Id*. at 912. After achieving this result, the parties entered into settlement negotiations, rather than proceeding to damages determinations. *See* A1406-A1407.

**Second**, the District Court rejected Stillwell's claim for a LPB bonus and, by doing so, granted summary judgment to ALIC on its Count II. While technically an offset to ALIC's withholding of funds from Stillwell, the fact that ALIC does not need to repay Stillwell his LPB payment amounts to a monetary judgment of $34,875.17. A17, A26. Appellants' arguments that ALIC did not recover any damages are therefore without merit.

**Third**, Appellants were enjoined from competing against ALIC and prohibited from using ALIC's trade secrets. After instituting this action "for injunctive and other relief," Appellants agreed to the entry of a preliminary injunction, enjoining their access and use of ALIC's confidential information. A222-A224. The preliminary injunction also enjoined Stillwell from soliciting, selling, or servicing life insurance policies, annuity contracts, or other business, in competition with the business of ALIC. *Id.* Specifically, the injunction states:

> The parties agree that there is no prevailing party **with regard to this Order** or the threatened Preliminary Injunction, and that no fees or costs will be requested or awarded to any party as a result of this Order. **This Order does not, however, prevent [ALIC] from seeking monetary damages or its attorneys' fees under its contractual relationship with Stillwell or as authorized by legal precedent or statute**.

A224 ¶ 8 (emphasis added).  Based on the injunction language, ALIC was not a prevailing party for the purposes of seeking attorneys' fees or costs from the order. The Order, however, does allow for ALIC to seek its fees through other means. Moreover, nothing in the Order prohibited the District Court from considering the injunction as a factor in the prevailing party determination.  Thus, the District Court appropriately considered the injunction in its prevailing party findings. *Institutionalized Juvs.*, 758 F.2d at 912 (a plaintiff is "prevailing" when there is "a voluntary cessation of the unlawful practice by the defendant").

**Fourth**, Appellants' claims that "ALIC was not awarded any damages" and/or obtained "an empty judgment" overlook the settlement agreement between the parties.[10]  Appellants' Br. at 51.  The fact that ALIC entered into a settlement agreement with Appellants supports the finding that ALIC was the prevailing party because the settlement terminated the litigation and benefitted ALIC. *Institutionalized Juvs.*, 758 F.2d at 912 (a plaintiff is prevailing when "the litigation successfully terminates by a consent decree [or] an out-of-court settlement."); *Doe*

---

[10] Appellants also overlook the fact that Federal Rule of Civil Procedure 56 states that "summary judgment, interlocutory in character, may be rendered on the issue of liability alone." Fed. R. Civ. P. 56(a), (b); *see also Kendall McGaw Laboratories, Inc. v. Community Memorial Hosp.*, 125 F.R.D. 420, 422 (D.N.J. 1989) (citing *Grand Motors, Inc. v. Ford Motor Co.*, 564 F. Supp. 34, 43 (W.D. Mo. 1982) (stating that where only damages are in issue, "partial summary judgment on the issue of liability" avoids "pointless litigation").

*v. Busbee*, 684 F.2d 1375, 1379 (11th Cir. 1982) (citing *Hanrahan v. Hampton*, 466 U.S. 754, 757 (1980)) (same).

Moreover, if the parties had not reached a settlement, the parties would have proceeded to a trial on the remaining claims as well as damages determinations, where ALIC would have received *at least* nominal damages.  For example, the NJUTSA allows ALIC to recover the actual loss caused by the misappropriation and the unjust enrichment damages that are tied to Appellants' use of ALIC confidential information.  N.J.S.A. § 56:15-4.  Thus, even though ALIC did not seek them due to the settlement agreement, ALIC was entitled to recover compensation that Appellants received from the customers they improperly solicited and transferred from ALIC to SFA.  *See* A988.  Under this provision, ALIC may have been entitled to recover the $250,000 commission Stillwell received for the Munoz Family company deferred compensation plan and the $646,000 "transitional compensation" he received from Ameriprise.

As to the other causes of action, "[t]he injury imports damage." *Spiegel v. Evergreen Cemetery Co.*, 186 A. 584, 588 (N.J. 1936).  Consequently, the Appellants' argument that ALIC did not obtain damages in this lawsuit, and cannot be a prevailing party, falls flat.  *Nappe v. Anshelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 45-46 (1984) (internal citations omitted) ("[T]he general rule is that whenever there is a breach of contract, or an invasion of a legal right, the law

ordinarily presumes that damage ensued."); *Interlink Grp. Corp. USA v. Am. Trade & Fin. Corp.*, Case No. 12-6179(JBC), 2014 WL 3578748 (D.N.J. July 18, 2014) (same).

***Fifth***, the Appellants' actions throughout the litigation suggest that Appellants conceded their entitlement to prevailing party status. For example, after ALIC relinquished its right to a trial on damages for the claims on which the Court granted summary judgment, the parties agreed that this did not apply to "attorneys' fees and costs under Federal Rule of Civil Procedure 54(d)." A1406 ¶ 3. The parties further agreed that ALIC "is permitted to file a Motion for Fees and Costs pursuant to Federal Rule of Civil Procedure 54(d) and Local Rules 54.1 and 54.2." A1406 ¶ 5. Appellants never raised the issue of recovering **their** attorneys' fees or costs when drafting this Order. Likewise, not once in the twenty-two months between the Court's summary judgment order and the parties' dismissal of claims Order did Appellants claim to be the "prevailing party." For this reason, the District Court appropriately concluded that Appellants' actions leading up to ALIC's motions for attorneys' fees and costs "appear to have conceded... that ALIC was the prevailing party." A46.

For these reasons, while Stillwell achieved a portion of the benefits he sought in bringing his counterclaim, many other factors outweigh Appellants' limited success. These factors include ALIC's (a) success on its claims, (b) award of the

LPB bonus, (c) entry of a preliminary injunction, (d) entry of a settlement agreement, and (e) Appellants' conduct over the last two years. In sum, ALIC achieved more than "some of the benefit" it sought when bringing this lawsuit. Therefore, the District Court did not err by determining that ALIC was the prevailing party.

### C.    The District Court Correctly Awarded ALIC With Its Costs.

Federal Rule of Civil Procedure 54(d) provides that "costs—other than attorneys' fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The costs that are taxable under Rule 54(d)(1) are confined to those itemized in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). As is explained more fully above, the District Court accurately concluded that ALIC was the prevailing party in the litigation. Further, the District Court appropriately awarded ALIC $11,823.70 in costs. The costs awarded were expressly contemplated by 28 U.S.C. § 1920, in the form of clerk and marshal fees, service of process, and deposition expenses.

Therefore, as the prevailing party in this action, ALIC's costs are supportable, proper, and necessarily obtained for use in the prosecution of its claims against Appellants. The District Court did not abuse its discretion in awarding ALIC $11,823.70 in costs. This Court should affirm the District Court's entry of costs in favor of ALIC.

### D.     The District Court Correctly Awarded ALIC With Its Attorneys' Fees.

An award of attorneys' fees and costs may be authorized by statute, contract, or other exceptional circumstances. *Flamini v. Valez*, No. CIV. 12-7304 RMB/JS, 2015 WL 333300, at *2 (D.N.J. Jan. 23, 2015) (*citing Polonski v. Trump TGj Mahal Assoc.*, 137 F.3d 139, 145 (3d Cir. 1998)).  New Jersey law and Federal Rule of Civil Procedure 54(d) allow the prevailing party to recover attorneys' fees pursuant to contractual provisions.  *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 730 A.2d 843, 848 (1999).

As set forth more fully in Section II.C., ALIC is the prevailing party for a number of reasons, and the District Court accurately concluded as much.  A68-A71.  Accordingly, ALIC moved for the recovery of the attorneys' fees that it is entitled to under the fee-shifting provisions contained in the ALIC Agreements.  A144, A149, A271-A272.

Although Appellants concede, and the District Court correctly recognized, that the ALIC's fee request "[fell] within the purview of the contractual provision[s] authorizing attorneys' fees,"[11]  Appellants do dispute the amount of attorneys' fees that were awarded to ALIC.  More specifically, they claim that the District Court abused its discretion by refusing to weigh the reasonableness of ALIC's requested

---

[11] *See* A64-A78 (quoting *Kellam Assocs., Inc. v. Angel Projects, LLC*, 357 N.J. Super. 132, 138 (App. Div. 2003)).

fees against the damages that ALIC recovered.  Appellants' Br. at 62.  As the District Court aptly pointed out, however, "there is no precise formula for th[is] portion of the reasonableness analysis" as "[t]he ultimate goal is to approve a reasonable attorney's fee that is not excessive." *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 388 (2009).  A77.  In this case, the District Court correctly took several steps to ensure that the attorneys' fees it awarded ALIC were reasonable and not excessive.

*First*, the District Court considered "reasonableness" when it employed the lodestar method to ALIC's claim for attorneys' fees.  A71-78 (quoting *Blakey v. Continental Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998)) ("The starting point for determining any reasonable fee is to calculate a 'lodestar' amount."). *Second*, the District Court considered "reasonableness" when it reduced its attorneys' fees award from $519,347.60, which was requested by ALIC, to $481,607.10 in response to the Appellants' objections.  A75-A76. *Third*, the District Court weighed the case law that Appellants advanced in support of their argument that ALIC's attorneys' fees must be reduced further.  In fact, the District Court's opinion devoted three pages to explaining why Appellants' argument was unavailing and appropriately rejected Appellants' request for further rejections. A77-A78 ("Defendants' argument ignores the critical fact that, as a condition for entering the parties' confidential settlement agreement, [ALIC] agreed to forego its pursuit of damages

in this litigation."). Moreover, the District Court wisely acknowledged that "[a]t bottom, Defendants' argument for further reductions based on the lack of a damages award essentially seeks to penalize [ALIC] for agreeing to settle this matter." A77.

This Court should likewise see Appellants' argument for what it is: ineffective and flawed. There is no evidence that the District Court abused its discretion in rejecting Appellants' request for a reduction in fees; the District Court simply disagreed with Appellants' basis for the request. The District Court's award of attorneys' fees should be affirmed.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellee/Counter-Appellant Allstate Life Insurance Company respectfully requests that this Court:

a. REVERSE the District Court's grant of summary judgment in favor of Stillwell and against ALIC with respect to the Accelerated Bonus (Counterclaim I) and enter summary judgment in favor of ALIC, or in the alternative, REVERSE AND REMAND the issue to the District Court for resolution at trial;

b. AFFIRM the District Court's grant of summary judgment in favor of ALIC and against the Appellants with respect to Counts I, II, III, VI, and VII; and

c.  AFFIRM the District Court's award costs in the amount of $11,823.70 and attorneys' fees in the amount of $481,607.10 in favor of ALIC and against the Appellants.

**Date: August 18, 2023**

**Respectfully submitted,**
**Plaintiff – Appellee / Counter – Appellant**
**Allstate Life Insurance Company,**

/s/ J. Scott Humphrey
J. Scott Humphrey
Katie M. Burnett
Sammi H. Roth
**BENESCH, FRIEDLANDER, COPLAN**
 **& ARONOFF LLP**
71 S. Wacker Dr., Suite 1600
Chicago, Illinois 60606-4637
Telephone: 312-212-4949
shumphrey@beneschlaw.com
kburnett@beneschlaw.com
sroth@beneschlaw.com

61

## COMBINED CERTIFICATIONS

This document complies with the type-volume limit of Fed. R. App. P. 28.1(e)(2) because, excluding the parts of the documents exempted by Fed. R. App. P. 32(f), this document contains 13,657 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14pt Times New Roman font.

J. Scott Humphrey and Katie M. Burnett are admitted to the U.S. Court of Appeals for the Third Circuit pursuant to 3d Cir. L.A.R. 46.1.

A virus detection program, CrowdStrike, has been run on this electronic file, and no virus was detected.

*/s/ J. Scott Humphrey*
J. Scott Humphrey

*Attorney for Plaintiff-Appellee/Counter-*
*Appellant Allstate Life Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this August 18, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the Third Circuit by using the CM/ECF system.  I certify that all counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

_/s/ J. Scott Humphrey_____
J. Scott Humphrey

*Attorney for Plaintiff-Appellee/Counter-Appellant Allstate Life Insurance Company*
